**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WILLARD EUGENE O'NEAL, JR.,          )
                                     )
           Petitioner,               )
                                     )
v.                                   )          **Case No. 06-CV-0610-CVE-PJC**
                                     )
GREG PROVINCE, Warden,[1]            )
                                     )
           Respondent.               )

<u>**OPINION AND ORDER**</u>

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by petitioner, a state prisoner appearing *pro se*.  Respondent filed a response to the petition (Dkt. # 8), and provided the state court record necessary for resolution of petitioner's claims (Dkt. ## 8, 9). Petitioner filed a reply (Dkt. # 10). For the reasons discussed below, the Court finds the petition shall be denied.

*BACKGROUND*

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, including the relevant transcripts and exhibits,[2] this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals ("OCCA") in its order resolving petitioner's direct appeal is adequate and accurate. The OCCA summarized the facts, as follows:

---

[1]      Petitioner is incarcerated at Dick Conner Correctional Center.  The proper party respondent is his current warden, Greg Province.  The Clerk of Court shall substitute Greg Province, Warden, in place of the State of Oklahoma as party respondent.

[2]      In resolving the claims raised by petitioner in his petition, the Court reviewed the following transcripts: Prelim. Hr'g Trans., dated December 19, 2002; Mot. Hr'g Trans., dated September 12, 2003; Trans. Proceedings, dated October 30-31, 2003; Mot. Hr'g Trans., dated January 14, 2004; Tr. Trans. Vols. I-VI, dated February 3-10, 2004.

At approximately 2:00 a.m. on December 23, 2001, Bruce Chamberlain the owner of the Trapeze Lounge, and employee Gildardo Rueda exited the Lounge. Chamberlain and Rueda proceeded to Chamberlain's car, where they were attacked and shot from behind.  Rueda survived the attack and tried to defend himself.  He was only able to identify his attackers as two black men because they were masked. Rueda staggered on to 31st Street where he was seen by Tulsa Police Officer Donald Pierce.  Discovering Rueda's injuries and the lifeless Chamberlain in the parking lot, Officer Pierce called for additional medical and police assistance.

Almost eight months after the shooting, a .22 caliber Colt pistol and ski mask were found in Lake Oolagah at the Winganon boat ramp.  Tulsa Police Detective Michael Zenoni obtained the gun and mask for testing in this case.  A comparison of the cartridge casings found at the scene of Chamberlain's shooting and those test-fired from the .22 caliber Colt pistol produced a match.  Tulsa police then traced ownership of the .22 caliber Colt pistol to Troy Mitchell.  Mitchell was located and informed Tulsa Police that he had give the pistol to Charity Owens.  In October 2002, Detective Zenoni found and interviewed Owens.

Owens told Detective Zenoni that at approximately 3:30 a.m. on December 23, 2001, her former boyfriend, Willard O'Neal, came to her apartment with an unidentified man.  O'Neal asked Owens to lead them to a rural location because "something had gone bad and they needed to get rid of some stuff."  Owens lead O'Neal to the Winganon boat ramp at Lake Oolagah.  During the drive, O'Neal and the unidentified man discussed killing Chamberlain and their disappointment with the proceeds from the robbery.  At the boat ramp, O'Neal got out of the car and threw two items into the water, including one that wrapped in "something dark."  On the way back to Tulsa, O'Neal told Owens he would kill her if she told anyone about the crime.

(Dkt. # 8, Ex. 3).

As a result of those events, petitioner was arrested and charged with First Degree Murder (Count 1) and Shooting With Intent to Kill (Count 2) in Tulsa County District Court, Case No. CF-2002-5639, both After Former Conviction of Two or More Felonies. On February 3-10, 2004, petitioner was tried by a jury. As to Count 1, the jury returned a verdict of guilty and recommended a sentence of life without the possibility of parole.  As to Count 2, the jury found petitioner guilty and recommended a sentence of life imprisonment. On March 22, 2004, the trial court judge sentenced petitioner in accordance with the jury's recommendation and ordered the sentences to be

served consecutively. Petitioner was represented during his criminal proceedings by Pete Silva and Richard Couch, attorneys from the Tulsa County Public Defender's Office.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Stephen Greubel, another attorney from the Tulsa County Public Defender's Office, petitioner raised the following propositions of error:

Proposition 1: The admission of Charity Owens's preliminary hearing testimony violated Appellant O'Neal's Sixth Amendment right to confrontation.

Proposition 2: The State's improper introduction and use of "other crimes" evidence violated Appellant O'Neal's Fourteenth Amendment right.

Proposition 3: Prosecutorial misconduct during closing argument deprived Appellant O'Neal of a fair trial and due process of law.

See Dkt. # 8, Ex. 1. In an unpublished opinion filed August 9, 2005, in Case No. F-2004-295 (Dkt. # 8, Ex. 3), the OCCA rejected each claim and affirmed the Judgments and Sentences of the trial court.

Petitioner, appearing *pro se*, filed an application for post-conviction relief in the state district court. The OCCA recognized that in his application, petitioner raised seven (7) grounds of error: (1) the prosecutor failed to disclose evidence favorable to his counsel [sic], (2) he was denied witness funds to rebut the State's expert testimony on ballistics, (3) the prosecution destroyed evidence favorable to him and which would have exonerated him, (4) he was denied the right to effective assistance of trial counsel, (5) he is factually innocent, (6) he received ineffective assistance of appellate counsel, and (7) the trial court erred and his counsel was ineffective for not requesting an instruction on the 85% rule. See Dkt. # 8, Ex. 6. By order filed October 5, 2006, the district court denied the requested relief. See Dkt. # 8, Ex. 5. Petitioner appealed. On October 23, 2006, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 8, Ex. 6.

On November 1, 2006, petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1).  Petitioner raises three (3) grounds for relief, as follows:

Ground 1:    Trial court improperly admitted Charity Owen's (a preliminary hearing witness) testimony at trial, violating my constitutional rights under 5, 6, 14th Amendments to the United States Constitution.

Ground 2:    The State of Oklahoma was improperly allowed to introduce a "prior-hearsay crime" (a previous robbery of the same establishment) as motive to give a story-like quality to a jury trial that was solely based on suspenseful narrative abilities.

Ground 3:    The state of Oklahoma's determination that Ineffective Counsel was not rendered was not adequate under U.S. Constitution, contrary to Strickland v. Washington, and the State Courts abused their judicial power by not granting a hearing to develop a factual record supporting this ground.

See Dkt. # 1.  In response to the petition, respondent asserts that petitioner's claims are not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d), or are procedurally barred. See Dkt. # 8.

## *ANALYSIS*

### A.    Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Respondent concedes, see Dkt. # 8, ¶ 5, that petitioner has exhausted state court remedies. The Court agrees.  The exhaustion requirement is satisfied in this case.

In addition, the Court finds that petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.**      **Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In this case, the OCCA adjudicated parts of petitioner's ground 1 and ground 2 on direct appeal. In addition, the OCCA adjudicated petitioner's claims of ineffective assistance of trial and appellate counsel on post-conviction appeal.  Therefore, to the extent those claims are cognizable, they shall be reviewed pursuant to § 2254(d).

**1.  Witness confrontation**

As his first proposition of error, petitioner complains that the trial court erred in allowing the preliminary hearing testimony of Charity Owens to be read into the record at trial. Petitioner identifies four arguments in support of this claim:  (1) there should be an exception to the

"unavailability" rule for a witness who has purposefully fled to avoid testifying, (2) cross-examination of Charity Owens at preliminary hearing was "limited" and her testimony included hearsay statements of an unidentified individual, (3) the jury was not informed that Charity Owens was avoiding appearing at trial and even provided a false name to avoid being picked up on a warrant, (4) trial counsel provided ineffective assistance of counsel in seeking a writ of habeas corpus ad testificandum to secure petitioner's presence at his own trial. Petitioner raised his first and second arguments on direct appeal.  The OCCA's resolution of those claims is discussed below. Petitioner did not raise his third and fourth arguments on direct appeal.  He did, however, raise them in his post-conviction proceeding.  The OCCA denied Petitioner's point 4 claim of ineffective assistance of counsel on the merits.  That claim is discussed in part B(3)(a)(i), below.  The OCCA imposed a procedural bar on petitioner's point 3 claim concerning the failure to tell the jury why Charity Owens was unavailable. However, the Court finds it is more efficient to consider and reject the claim on the merits than to analyze the issues associated with the procedural bar. Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007) (holding that a court "can avoid deciding procedural bar questions where claims can readily be dismissed on the merits").  Therefore, petitioner's third argument is analyzed on the merits below.

Petitioner is not entitled to habeas corpus relief on his claim that he was deprived of the right to confront and cross-examine a witness against him unless he demonstrates that the OCCA's direct appeal decision was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).  In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause prohibits the admission of testimonial hearsay unless the declarant is unavailable to testify and there was a prior opportunity

for cross-examination. Crawford, 541 U.S. at 68. The Supreme Court did not define "testimonial," but noted "it applies at a minimum to prior testimony . . . at a former trial." Id. Under Ohio v. Roberts, 448 U.S. 56, 74 (1980), *overruled on other grounds by* Crawford, 541 U.S. 36, a witness is not unavailable unless the prosecution has made a good-faith effort to obtain her attendance at trial. Whether the government has made a good-faith effort is "a question of reasonableness." Cook v. McKune, 323 F.3d 825, 835 (10th Cir. 2003) (internal quotation marks omitted).

In this case, petitioner has failed to demonstrated that the OCCA's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see Roberts, 448 U.S. at 75-77 (affirming determination that witness was unavailable). First, petitioner is not entitled to habeas corpus relief based on the OCCA's determination that Charity Owens was "unavailable." "[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25 (1968). Although petitioner argues that there should be an exception if the witness has purposefully avoided being located to testify, the focus of the test is on the prosecution's efforts to secure the witness's presence at trial rather than on any action taken by the absent witness. In resolving this claim on direct appeal, the OCCA summarized information contained in the record as follows:

> A material witness warrant was sought for Owens's arrest. The State then used several law enforcement agencies to search for Owens. These law enforcement officials contacted family members and friends and searched prior and possible current residences. The State also issued a Crime Stoppers alert in local print and television media seeking assistance in locating Owens. Owens could not be located.

(Dkt. # 8, Ex. 3 at 3).  Based on that record, the OCCA determined that the trial correctly found Charity Owens to be an unavailable witness.  Petitioner has failed to convince the Court that the prosecution did not make a good faith effort to obtain Charity Owens's presence at trial.

Next, petitioner argues that the scope of cross-examination at preliminary hearing is limited by state law and, therefore, inadequate to satisfy Confrontation Clause concerns.  In rejecting this claim on direct appeal, the OCCA found as follows:

> Preliminary hearing provides an adequate opportunity and similar motive for cross-examination to allow admission of that testimony pursuant to the Confrontation Clause.  Here, Owens testified under oath and was cross-examined by O'Neal's trial attorneys.  This is all that is required for the admission of an unavailable witness' preliminary hearing testimony.  Owens's preliminary hearing testimony was reliable and properly admitted.

(Dkt. # 8, Ex. 3 at 4 (footnotes omitted)).  The extent of any cross-examination of the unavailable witness is not part of the Confrontation Clause analysis.  Instead, the right of confrontation requires that the defendant "had an adequate opportunity to cross-examine."  Crawford, 541 U.S. at 57 (citations omitted).  Petitioner's defense counsel had the opportunity and did subject Owens's preliminary hearing testimony to cross-examination to challenge her reliability.  That is all that is required under the Constitution.  Petitioner has failed to demonstrate entitlement to habeas corpus relief on this claim.

Petitioner further argues that the admission of Charity Owens' testimony concerning statements made by an unidentified co-conspirator violated his right to confront a witness against him.  At the preliminary hearing, Owens testified that she heard petitioner and his unidentified co-conspirator discuss details of the shootings outside the Trapeze Lounge.  As noted by the OCCA, only one statement was directly attributable to the unidentified co-conspirator.  During the preliminary hearing, petitioner lodged no objection to the testimony. As to the statements attributed

by Owens to petitioner and the unidentified companion, the OCCA, relying on state law, determined that "the statements were not hearsay because the statements were made between co-conspirators during the commission of and in furtherance of the conspiracy." Dkt. # 8, Ex. 3 at 5. The OCCA did not address petitioner's separate argument that admission of Owens's preliminary hearing testimony violated his right to confront a witness against him, his co-conspirator. However, petitioner's claim based on the Confrontation Clause fails. "[T]he Confrontation Clause does not give a defendant the right to cross-examine a person who does not testify at trial and whose statements are introduced under the co-conspirator hearsay exclusion." United States v. Reyes, 362 F.3d 536, 541 (8th Cir. 2004) (citing White v. Illinois, 502 U.S. 346, 356 (1992)); see also Martinez v. Sullivan, 881 F.2d 921, 929 (10th Cir. 1989) (finding no violation of Confrontation Clause by admission of co-conspirator's out-of-court statements). Petitioner is not entitled to habeas corpus relief on this claim.

Petitioner also complains that his jury was not informed that Charity Owens was unavailable because she was purposefully avoiding testifying at trial. As indicated above, this claim was first raised in petitioner's application for post-conviction relief where it was subjected to a procedural bar. This Court finds that it is easier to consider and deny the claim on the merits. Snow, 474 F.3d at 717. Petitioner has failed to cite any authority requiring a jury to be informed as to the reason for a witness's unavailability. Furthermore, petitioner has not demonstrated that he was prejudiced by the trial court's failure to tell the jury that Owens was "unavailable" because she had purposefully avoided the prosecution's efforts to find her to testify at trial. During cross-examination of Owens, defense counsel elicited testimony concerning her prior convictions and extensive history of writing

bad checks.  Thus, the jury was aware that Owens had reason to avoid contact with law enforcement.

Petitioner is not entitled to habeas corpus relief on this claim.

### 2.  Introduction of other crimes evidence

In his second ground of error, petitioner complains that the trial court judge, over his

objection, allowed introduction of other crimes evidence.  Specifically, he complains that the State

was allowed to present evidence that he had previously robbed the Trapeze Lounge and planned to

rob it again because he was disappointed with the proceeds from the first robbery.  On direct appeal,

the OCCA found that the evidence "was extremely probative evidence of O'Neal's motive, intent

and plan to commit another robbery at the same site.  For these reasons, the evidence was also more

probative than prejudicial.  Accordingly, we find that the trial court did not abuse its discretion and

correctly admitted the other crimes evidence."  See Dkt. # 8, Ex. 3 at 6 (footnote omitted).

A habeas court evaluates admission of "other crimes evidence" under general due process

principles to determine whether evidence was "introduced that is so unduly prejudicial that it renders

the trial fundamentally unfair . . . ." Payne v. Tennessee, 501 U.S. 808, 825 (1991) (citing Darden

v. Wainwright, 477 U.S. 168, 179-83 (1986)); see also Estelle v. McGuire, 502 U.S. 62, 69-70

(1991); Knighton v. Mullin, 293 F.3d 1165, 1170 (10th Cir. 2002). The Tenth Circuit has held that

this standard will be satisfied only if "the probative value of [the challenged] evidence is . . . greatly

outweighed by the prejudice flowing from its admission . . . ." Knighton, 293 F.3d at 1171 (internal

quotation marks omitted).

After reviewing the trial transcripts, the Court finds that the OCCA's rejection of petitioner's

claim on direct appeal is neither contrary to, nor an unreasonable application of, these general

principles. The state appellate court's determination that the evidence "was extremely probative of

O'Neal's motive, intent and plan to commit another robbery at the same site" was not erroneous.

Furthermore, petitioner has failed to demonstrated that the admission of the evidence rendered his

trial fundamentally unfair. When the evidence of petitioner's involvement in the prior robbery of the

Trapeze Lounge was introduced through the testimony of Stephanie Kelley, Mistie Bryant, and

Bonnie Fiarris, the trial court contemporaneously instructed the jury as to the limited purpose of the

evidence and that the jury was not to consider the other crimes evidence as proof of guilt or

innocence of the crimes charged in the Information. See Tr. Trans. at 715, 797. In addition, a written

instruction concerning the limited purpose of evidence of another crime was given to the jury.  See

Dkt. # 8, Ex. 9 (Instruction No. 15).  Jurors are presumed to follow the judge's instructions.  Francis

v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("Absent . . . extraordinary situations, . . . we adhere to

the crucial assumption underlying our constitutional system of trial by jury that jurors carefully

follow instructions.").  Petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. §

2254(d).

### 3.  Ineffective assistance of counsel (part of ground 1 and ground 3)

In part of ground 1 and ground 3, petitioner asserts that he received ineffective assistance of

trial and appellate counsel.  Petitioner raised various claims of ineffective assistance of trial and

appellate counsel in his application for post-conviction relief.  On post-conviction appeal, the OCCA

ruled as follows:

> In order to prevail on his claims of ineffective assistance of trial or appellate
> counsel, Petitioner must establish both that trial and appellate counsel made errors
> so serious the performance was deficient, and that the deficient performance
> deprived Petitioner of a trial and appeal whose results are reliable and fair.
> *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674,
> 693 (1984); *Cartwright v. State*, 1985 OK CR 136, ¶ 6, 708 P.2d 592, 594.  We
> **FIND** the District Court's analysis of Petitioner's claims to be accurate.  Petitioner

has not established trial or appellate counsel's performance was deficient or that the
result of his appeal was not reliable and fair.

(Dkt. # 8, Ex. 6).  Thus, the OCCA considered and rejected on the merits petitioner's claims of

ineffective assistance of trial and appellate counsel.[3]

### a.  ineffective assistance of trial counsel

To be entitled to habeas corpus relief on his claims of ineffective assistance of trial counsel,

petitioner must demonstrate that the OCCA's adjudication of these claims was an unreasonable

application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must

show that his counsel's performance was deficient and that the deficient performance was

prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level

expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.

There is a "strong presumption that counsel's conduct falls within the range of reasonable

professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a]

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t

is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude

that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second

prong, a defendant must show that this deficient performance prejudiced the defense, to the extent

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to

_____

[3]     The Court rejects respondent's position that the ineffective assistance of trial counsel claims
       are procedurally barred.

undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

As part of ground 1, petitioner claims that his trial counsel provided ineffective assistance in filing a petition for writ of habeas corpus ad testificandum to compel petitioner's attendance at trial without the presence of a material witness, Charity Owens. In ground 3, petitioner claims he received ineffective assistance of trial counsel when counsel failed to present expert testimony to refute the testimony of the State's ballistics expert, failed to challenge all "'third party' hearsay harpoons at preliminary hearing," failed to request that the jury be instructed on the 85% Rule, and failed to call Ms. Lois Snyder as an alibi witness.

### i. compelling petitioner's presence at trial

In ground 1, petitioner claims that his trial counsel provided ineffective assistance in filing a petition for writ of habeas corpus ad testificandum to compel his presence at trial. This claim somehow relates to the trial court's determination that witness Charity Owens was "unavailable" at the time of trial. The Court finds no legal basis for petitioner's contention that his trial counsel performed deficiently in compelling his presence at trial. Defense counsel forcefully argued that the State had failed to carry its burden to establish Owens's unavailability and moved for a continuance of the trial until Owens could be found. See Trans. dated October 30, 2003, at 61-67; Trans. dated October 31, 2003, at 11. The trial court found that the State had made reasonable efforts to locate Owens, determined that she was "unavailable," and denied the requested continuance. See Trans. dated October 31, 2003, at 14. Trial counsel was left with no option but to proceed to trial.

13

Petitioner fails to offer an adequate factual or legal basis for this claim. The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment establish a defendant's right to be present at all stages of a criminal trial. Illinois v. Allen, 397 U.S. 337, 338 (1970); see also United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam).  In Oklahoma, a defendant has a statutory right to be present at trial. Okla. Stat. tit. 22, § 583.  A defendant, however, may waive his right to be present, or he could lose that right through misconduct. Snyder v. Massachusetts, 291 U.S. 97, 106 (1934), *overruled in part on other grounds*, Malloy v. Hogan, 378 U.S. 1 (1964); see Clark v. Stinson, 214 F.3d 315, 323 (2d Cir. 2000) (stating that the right to be present at one's own trial is "clearly waivable"); Gregg v. Oklahoma, 844 P.2d 867 (Okla. Crim. App. 1992) (stating that statutory right to be present at felony trial may be waived by disruptive conduct or by voluntary absence). Because the trial court had denied defense counsel's request for a continuance until Charity Owens was located, defense counsel did not perform deficiently in taking steps necessary to insure petitioner's presence at his own trial.  Furthermore, because the right to be present is waivable, it is likely that had petitioner refused to attend his own trial,  the trial judge may have found he had waived his right to be present and proceeded with the trial.  Trial counsel did not perform deficiently in insuring that petitioner was present for his trial. Petitioner is not entitled to habeas corpus relief on this claim.

### ii.  failure to refute the testimony of the State's ballistics expert

Petitioner asserts that his trial counsel provided ineffective assistance in failing to challenge through expert testimony the ballistics evidence presented by the prosecution.  In support of this claim, petitioner cites to exhibit K2, attached to his petition, and argues that the "state's expert's test was actually inconclusive as to AP-1114's shells tested!"  See Dkt. # 1 at 9.  Petitioner fails to

14

recognize, however, that the State's ballistics witness, Dennis Fuller, testified at trial that the bullets recovered from the body of the victim, items 55 and 56, were compared to bullets test-fired from the gun recovered from Lake Oolagah and that the results of the comparison were inconclusive. See Tr. Trans. at 747. Defensive counsel did not perform deficiently in failing to challenge the ballistics evidence since the very evidence now cited by petitioner was in fact presented at trial. For the same reason, Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair or that he was prejudiced by the trial court's alleged refusal to grant funds for the hiring of a ballistics expert. Moore v. Reynolds, 153 F.3d 1086, 1111-12 (10th Cir. 1998). Petitioner is not entitled to habeas corpus relief on this claim.

### iii. failure to challenge "'third party' hearsay harpoons" at preliminary hearing

Petitioner next argues that his trial counsel provided ineffective assistance in failing to object to the preliminary hearing testimony of Charity Owens concerning the conversations between petitioner and the unidentified co-conspirator. Even if counsels' failure to object was deficient performance, petitioner has failed to establish that he suffered prejudice as a result of the deficiency. As noted by the OCCA, statements attributed to petitioner were admissible as admissions. See Dkt. # 8, Ex. 3 at 4-5. The single statement attributed to the unidentified co-conspirator was not hearsay since it was made during the course of the conspiracy. Id. Thus, even if counsel had objected, the objection would have been overruled since the statements were admissible under Okla. Stat. tit. 12, § 2801(B)(2)(a), (e) (Supp. 2004). Petitioner is not entitled to habeas corpus relief on this claim.

### iv.  failure to request instruction on the 85% Rule

Petitioner claims that trial counsel provided ineffective assistance in failing to request that the jury be instructed on the "85% Rule."  Under the 85% Rule, as applicable to the facts of this case, "[p]ersons convicted of: [f]irst degree murder; . . . [s]hooting with intent to kill . . . shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole." Okla. Stat. tit. 21, § 13.1 (2002).  In 2006, after petitioner was convicted and sentenced, the OCCA held that trial courts should instruct jurors on the 85% Rule prior to sentencing. Anderson v. State, 130 P.3d 273, 283 (Okla. Crim. App. 2006). The Anderson court, however, specified that its holding was prospective and did not apply to "cases before this decision." Id.

The United States Supreme Court has not held that the Constitution requires the jury to be informed of a defendant's parole eligibility in a non-capital case. Indeed, the Court has only held that the Constitution requires such information to be provided to a jury in a limited set of capital cases. See, e.g., Simmons v. South Carolina, 512 U.S. 154 (1994) (holding, in a capital case, that the jury must be informed of parole eligibility when: (1) the defendant, if sentenced to life, will never become legally eligible for parole; and (2) the prosecution argues that the defendant presents a future danger). In light of this precedent, petitioner has failed to demonstrate constitutional error. 28 U.S.C. § 2254(a). Thus, the trial court's failure to instruct on the 85% Rule did not render petitioner's trial fundamentally unfair in a constitutional sense. See Taylor v. Parker, 276 Fed. Appx. 772, 775-76 (10th Cir. 2008) (unpublished) (in a non-capital case, rejecting petitioner's contention that he was entitled to habeas relief because the trial court failed to instruct the jury on Oklahoma's 85% Rule).

In addition, petitioner's trial counsel did not perform deficiently in failing to request an instruction on the 85% Rule.  At the time of petitioner's trial, held February 3-10, 2004, an instruction on the 85% Rule was not required under Oklahoma law. The OCCA issued its opinion in Anderson on February 22, 2006, or more than two (2) years after petitioner's trial. Petitioner's trial counsel did not perform deficiently in failing to anticipate the change in law by requesting an instruction on the 85% Rule. See Haney v. Addison, 275 Fed. Appx. 802, 806 (10th Cir. 2008) (unpublished) ("[T]he failure of Mr. Haney's lawyer to request an instruction on the 85% Rule did not constitute ineffective assistance of counsel because Anderson was not decided until four months after his trial."), cert. denied, 129 S. Ct. 766 (Dec. 15, 2008); Cheadle v. Dinwiddie, 278 Fed. Appx. 820, 823 (10th Cir. 2008) (unpublished) ("Although the OCCA recently changed its position with regard to whether the jury can be instructed on how much time a defendant must serve before parole eligibility, that court did not base its change on anything in the United States Constitution, nor did it apply the new rule retroactively. In sum, Cheadle has not shown appellate counsel was constitutionally ineffective for failing to critique the work of trial counsel." (citing Anderson, 130 P.3d at 283)), cert. denied, 129 S. Ct. 918 (Jan. 12, 2009).  Petitioner is not entitled to habeas relief on this claim of ineffective assistance of trial counsel.

### v.  failure to call alibi witness

Lastly, petitioner asserts that trial counsel provided ineffective assistance in failing to call Lois Snyder as an alibi witness.  Petitioner claims that Snyder's testimony "would have had the effect of contradicting Charity Owens's testimony as to events surrounding the murder."  See Dkt. # 1 at 11.  In support of this claim, petitioner provides his "Notice of Intent to Offer Alibi Defense" (Dkt. # 1, Ex. D), filed in Tulsa County District Court, Case No. CF-02-5639.

17

On the first page of the "Notice of Intent to Offer Alibi Defense," counsel identified the potential alibi witnesses as Bonnie Fiarris and Lois Snider and indicated that both women would testify that petitioner was at a home located at 2747 E. 44th Street North during the early morning hours of December 23, 2001.  The record reflects that counsel did call Bonnie Fiarris as a witness for the defense.  See Tr. Trans. at 896.  Fiarris testified that petitioner picked her up from work at 2:15 a.m. on the morning of the murder and was with her until 3:45 a.m. when she fell asleep.  Id. at 897-98, 909. The anticipated testimony of Snyder as presented in the "Notice of Intent to Offer Alibi Defense" is similar to that of Fiarris and would have been, for the most part, cumulative.  Even if, arguendo, the Court were to conclude that trial counsel's performance was not objectively reasonable, petitioner cannot meet the prejudice prong of the Strickland test.  As indicated above, to demonstrate prejudice, petitioner must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  United States v. Owens, 882 F.2d 1493, 1501 (10th Cir. 1989) (quoting Strickland, 466 U.S. at 693-94); see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) ("the 'prejudice' component of the Strickland test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").  Petitioner has not met this standard.  The time frames provided in the "Notice of Intent to Offer Alibi Defense" and by defense witness Fiarris are general and do not preclude the possibility of petitioner's involvement in the shootings outside the Trapeze Lounge.  Petitioner has failed to demonstrate that the result of his trial was unreliable because counsel failed to call Snyder as an alibi witness.  Therefore, he has not satisfied the prejudice prong of the Strickland standard.

The Court concludes that the OCCA's decision rejecting his claims of ineffective assistance of trial counsel was not so demonstrably incorrect as to be an objectively unreasonable application of Strickland. See Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (when state court's application of Strickland is challenged, "it must be shown to be not only erroneous, but objectively unreasonable"). Accordingly, the Court finds petitioner is not entitled to habeas relief on his claims of ineffective assistance of trial counsel.

### b.  ineffective assistance of appellate counsel

As part of ground 3, petitioner claims that appellate counsel was constitutionally ineffective for failing to raise the following ineffective assistance of trial counsel claims on direct appeal: (1) that trial counsel failed to secure an expert to counter the testimony of the State's ballistics expert, and (2) failed to object to "'third party' hearsay harpoons at preliminary hearing." He also complains that appellate counsel worked under a conflict of interest and that he was "abandoned" on direct appeal. As indicated above, the OCCA rejected petitioner's claim of ineffective assistance of appellate counsel on post-conviction appeal, finding that petitioner did not establish his counsel's performance was deficient under the standards enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Dkt. # 8, Ex. 6 at 2.

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether

counsel's failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing a petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, petitioner "would have prevailed on his appeal." Neill, 278 F.3d at 1057 (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

### i.  failure to raise claims of ineffective assistance of trial counsel

The Court has determined above that petitioner's claims of ineffective assistance of trial counsel lack merit.  Therefore, appellate counsel did not provide ineffective assistance in failing to raise the claims on direct appeal.  Hawkins, 185 F.3d at 1152.

### ii.  appellate counsel's conflict of interest/ "abandonment" of petitioner

Petitioner also complains that appellate counsel worked under a conflict of interest and "abandoned" him during his direct appeal.  Petitioner provides little factual support for these claims. As to his conflict of interest claim, petitioner argues only that appellate counsel, Stephen J. Greubel, an assistant public defender for Tulsa County, was reluctant to bring a claim of ineffective assistance of trial counsel because one of petitioner's trial attorneys was Greubel's boss, Pete Silva, Chief Public Defender for Tulsa County. Petitioner's claim fails because he has not identified a meritorious claim of ineffective assistance of trial counsel omitted by appellate counsel on direct appeal. Similarly, petitioner claims that he was "abandoned," but fails to identify any claim that he wanted raised on direct appeal.  In other words, petitioner has failed to satisfy the prejudice prong

of <u>Strickland</u>.  He is not entitled to habeas corpus relief on his claims that appellate counsel had a conflict of interest and "abandoned" him.

In summary, petitioner has failed to demonstrate that the OCCA's adjudication of his ineffective assistance of appellate counsel claims was contrary to or an unreasonable application of Supreme Court law.  Therefore, petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

*CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus should be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The Clerk of Court shall **substitute** Greg Province, Warden, in place of the State of Oklahoma as party respondent.

2.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A separate judgment shall be entered in this matter.

**DATED** this 1st day of June, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

21